Your Honor, the second case of the morning is called 211-0866. Zechman v. City of Highland Park, from Harrisville, and their construction company. On behalf of the Appalachians, James Pitocoro. On behalf of the athlete, Ms. Melissa Murphy-Thomas. Good morning, counsel. Mr. Pitocoro. Good morning, justices. Good morning, counsel. Jim Pitocoro, on behalf of Appellant James and Barbara Zechman, along with me in court is Elizabeth Stevens, who also worked extensively on the case, so I felt it only right that she be here. Before the court, before the justices, are eight issues on appeal in the Zechman v. Highland Park case. The first issue being whether the trial court improperly granted the city's motion in limine no. 18, which is essentially the same as the city's motions in limines no. 1 and 2, relating to evidence regarding the 1994 upgrade project, thus improperly barring the plaintiffs from presenting any evidence whatsoever as to the city's negligence during the project, due to the trial court's interpretation of the applicability of the construction statute of repose. That seems to be a major issue in this case. Are you saying that that does not apply here, the construction statute of repose, at all? That is correct, justice. We are saying... I know your one argument is that the city wasn't involved in the construction, and that's one of the reasons. Are there any other reasons why it doesn't apply? Well, as your Honor noted, I think primarily the enumerated activities that are listed in the construction statute of repose were not in play here. The city did not actively engage in the construction project. They did not supervise. They did not draw the engineering plans. So that's one issue. I think the second issue, which is a critical issue, is that my client's home was connected to the sewer system pre-1994, and they were disconnected as a result of the project in 1994. So if the city had done nothing, if there was no upgrade project or they did nothing, my client would have still been connected to the sewer system, would have had no problems. However, in this case, the city actively disconnected my client's connection. Pursuant to this construction project? Yes, that is correct. Pursuant to the construction project. But the problems arose because of the failure to reconnect, correct? That is correct. So why do we have to go back further than that? Why do we have to go pre-1994? Right. I think the Jacobson case explains exactly why we go pre-1994. That dealt with the dental statute of repose, and in that case, the court ruled, in fact, the Second District ruled, that it was not a limitation on evidence that could be presented. In the Jacobson case, the defendant was allowed to present evidence as to the plaintiff's dental hygiene care pre-1994, and that's exactly what the trial court allowed the City of Highland Park to do in this case. They questioned my clients extensively regarding the maintenance and upkeep of their property pre-1994. Yet, when it came to the Zachman's ability to offer evidence regarding the negligence during the 1994 project, they were prohibited. Counsel, let me finish your thought, but I have a question related to that. Go ahead. In fact, I think the question that the jury submitted, the question they submitted to the court that was read to the counsel for both parties, can we consider the 1994 project as part of negligence? Can we go back to that issue and consider that negligence? To me, that speaks volumes as to what the jury was thinking. Clearly, they knew about the 1994 project because there were certainly many inferences to it, and clearly they wanted to find negligence or they wanted to know if they could consider negligence during the 1994 project. The answer the court gave the jury was no, and I think that materially changed the outcome of the case. Counsel, obviously you're arguing that the court improperly restricted your negligence claim, but as I read it, the order barring this evidence regarding the City's role in the design, construction, etc., did not preclude you from presenting evidence the City was negligent for the continued disconnection to this arms order, did it? That's correct, Justice. We could present evidence post-1994 that the City failed to reconnect the Zeckman home. However, the issue of disconnection in the first place, I think, was critical to the jury's consideration. They needed to understand that the Zeckmans were connected to something. In fact, Ms. Anderson from the City created doubt as to whether they were connected to something. She testified that she didn't know if they were connected to anything. They could have spilled out into a ditch. You were free to pursue that line of questioning, Ms. Anderson, of any evidence you want, or simply raise a reasonable inference, which I think you did at trial, that before 1994 we had no problems, after 1994 we had problems, we found out we were disconnected, so the reasonable inference is we were connected, we didn't have any problems, got disconnected, and had problems. I mean, pre-1994, it doesn't seem like the court really precluded you from talking about pre-1994. It precluded you from going into the City's negligence at the construction project, correct? Is that what we're getting at? Essentially, that is correct, and I think that's a critical issue. I think that was an issue the jury needed to understand, that there was negligence during the 1994 project. But again, I want to get back to whether the construction statute applies. And you said it doesn't apply because the City really didn't do anything during this project. But that's in direct conflict or contradiction to paragraph 24C of your complaint. I think it was a verified complaint that the City failed to take proper care, precautions, blah, blah, blah, in the planning, design, performance of the construction activities. I mean, you pled that the City was actively involved in the construction. Now you're arguing that it wasn't in order to avoid the statute of liabilities. You are absolutely correct, except the court in March of 2010, Judge McCoskey's ruling on the summary judgment or the motion to dismiss that the City of Highland Park brought, Judge McCoskey's ruling granted summary judgment on those two issues, 24C and D. So those issues were removed from the case. But that doesn't change your pleading. You didn't withdraw them. You didn't ask to be stricken. I mean, if you plead something in a verified complaint, that's a judicial admission. It was found to be not part of your case anymore because of a pretrial ruling. But that doesn't remove it as an admission, does it, that the City was actively involved in this? I mean, if the court rules that you can't go forward on that, that's a little different than striking it on your motion, isn't it? Well, in response to that, the City of Highland Park never answered those allegations. So I believe they were stricken. I believe Judge McCoskey's order struck those two paragraphs of paragraph 24 from the complaint, leaving 24A and B to survive. And that's why I don't believe the construction statute of repose applies. I think Judge McCoskey hit the nail on the head. I think Your Honor is correct that 24C and D were barred by the construction statute of repose, and that's why they were stricken. However, 24A states negligence related to the City's failure to reconnect the Zeckman's property storm sewer connection to Highland Park's storm sewer system. And 24B says cause or permitted to be caused the crushing and continued disconnection of Zeckman's property storm sewer connection to Highland Park's storm sewer system. Those allegations survived, and those allegations were the central allegations in the case. Extensive discovery was done on those allegations. Extensive discovery was done on the 1994 project and the City's role or lack thereof in that project and the negligence that arose from the project. The fact that it's plain as day. The Zeckmans were not reconnected. The driveway was excavated in 2008, and it was determined unequivocally that they were not connected. The problems at the Zeckman home stopped immediately following reconnection. It's also interesting to note that the Zeckmans had two different gutter systems. The gutter system in the front of the house was tied into Highland Park's sewer system. The gutter system in the back of the house splashed into the yard. The Zeckmans had no water infiltration issues at the back of the home. All the issues focused on the front of the home where the gutter system was connected to the Highland Park sewer system. I think that's a critical distinction, and it's critical because the entire premise of the defendant's defense was that the plaintiff did not maintain or upkeep their home. If that's true, why didn't we have damage at the back of the home? No damage at the back of the home, only the front of the home. I think it's clear the damage was caused, approximately caused, by the failure to connect to the sewer system. And I don't believe paragraphs 24a and b of the complaint, which I read to the court, are covered by the construction statute or oppose. I think it's clear the case law discusses it's not a classification. It can't be just a contractor, just an architect, just an engineer. It's one of the enumerated activities. And I think in this case, 24a and b are not encompassed by those enumerated activities in the construction statute or oppose. Counsel, you have a number of points on appeal, so moving forward, what is your position on the defense of tort immunity that the plaintiff's city raised in this case? And if I can add to that, how were you prejudiced by, if you were, by the trial courts allowing this affirmative defense to be added at a late time? Good questions. At the beginning of the case, the defendant did bring the tort immunity as an affirmative defense. However, they brought the policy and deliberate intention component of tort immunity at the beginning of the case, and Judge McCoskey denied that. So they never pled an affirmative defense based on tort immunity after March of 2010, which is when that issue was decided by Judge McCoskey. After we closed our case in chief, after we closed our case in chief, Judge Dunn allowed them to add an affirmative defense predicated on 3-102, which I believe added a whole new series of elements to our case. I could not address the issue of notice, actual or constructive, except on rebuttal and except with limited witnesses. I didn't do any discovery on that issue as to what it would cost to do dye testing, what the manpower would cost. I didn't identify another expert that could testify that this is what it would cost, this is what it would entail. There were 53 homes impacted by the project. It would have taken two weeks to do this testing. I didn't go into any of that because it wasn't an issue in the case until after I closed my case in chief. The argument has some superficial appeal, but doesn't 2-616 of the code permit parties to amend their pleadings at any time? It does, except if it prejudices the other side. And the courts also frown upon doing so after a case in chief has been closed. We're at trial. An affirmative defense is being added. There's no reason why they didn't bring this affirmative defense earlier on. But wasn't the issue of lack of notice in the case from the beginning, no matter how you would label it legally, I mean, weren't you aware of that? As it relates to duty, as it relates to whether there's a duty or not, yes, I agree with that. The elements of a negligence claim are duty, breach, approximate cause, and damages. So as it relates to duty, which, as your honors know, is a question of law that can be reviewed de novo, notice is an issue. And we would argue that notice started in 1994 when they failed to reconnect and continued to 2008 when the problem was discovered. And the Illinois courts have found that 14 years of continued notice constitutes constructive notice. It's such a long period of time, plus the means by which to make that determination was exclusively within the control of Highland Park. My clients can't excavate the street to determine whether or not they're connected. Now, the fact that they had 14 years of water infiltration in their home, should that have suggested a problem? Yes, but they contacted plumber after plumber after roofer after handyman after contractor to help diagnose the problem. And they couldn't diagnose the problem until the plumber tried to rot out the sewer system and determine that there was a blockage. Well, you're arguing kind of like notice was important, but that you didn't think to doing discovery on notice because it wasn't raised as an affirmative defense. 24B of your complaint says that the city caused or permitted to be caused the continued disconnection. I mean, there has to be some, I mean, as you're writing this and thinking, how am I going to prove this? I mean, you have to prove that the city knew or reasonably should have known, knew notice, reasonably should have known or had constructed notice of the problem. So, I mean, wasn't this always an issue? Didn't you have to show that the city knew or should have known that there was a problem here? Yes, and we believe if we could have gone into the 1994 project, we could have established it. But how did this change, you know, the introduction of this affirmative defense? How did this change the course of the trial? Because it adds a cost-benefit analysis into the equation that was never there before. The cost-benefit analysis? Yes. Agreed to that. But the notice issue, first you argue notice and, I mean, notice was always part of this trial, was it not? In the context of the duty, yes. I believe that it was. Now we get to the cost-benefit and you're saying that this affirmative defense introduced that issue into the trial if we looked it down. Yes, that is correct. And there was no discovery done on the cost-benefit analysis. There was no expert witness identified. I simply was limited to questioning Mary Anderson, which is one of the only two witnesses the defendant presented, on rebuttal regarding the issue of cost-benefit analysis. And quite frankly, if Your Honors reviewed her testimony, it was sparse. She couldn't identify what the cost would be, how expensive it would be. She simply said it would involve manpower and die. Someone would have to put the die in the system by the house and someone would have to look for the die to come out in the street. That's all she said. She didn't tell us it was cost prohibitive. She just simply said there would be costs associated. Of course there would be costs associated, but we don't know what those costs would be. I couldn't go into any testimony, any evidence to rebut that because I didn't know that was going to be an issue in the case. Did you ask for any time or any relief from the court? Once the court granted the motion to allow the affirmative defense, did you ask for any time or any relief from the court to alleviate this prejudice? I did not. And short of a mistrial, I don't know how I could have. Did you ask for a mistrial? I did not. The other critical component, and I think Your Honor obviously raises the issue of notice, I think the 1994 negligence is also critical of the issue of notice. If I can't discuss the 1994 project and what happened or what didn't happen during that project, I'm limited on that notice component. I can't develop a theory that the city should have known they weren't connected. And also, I was limited in my questioning on the 1999 issue with the house two doors to the east that was also disconnected. I was limited on what I could discuss as it relates to that particular property. I believe that also gave the city actual notice that there was a problem. There was a house two doors to the east that was impacted by the same 1994 upgrade project. Five years later, 1994 to 1999. So that should have put the city on notice that they should have done something. In fact, the PowerPoint presentation and the email from Mary Anderson discussed those issues. And I was limited. I could not go into that. I could not show the jury those things, which I believe would have helped establish notice. The fact that a similar problem or the same problem happened two doors to the east five years later, certainly was probative evidence that the same thing happened to the Zuckmans and that would have been noticed to the city. And if the city had done something in 1999, there wouldn't have been nine more years of damage following 1999. We didn't identify the problem until 2008 when the driveway was excavated. So I think those two things sort of dovetail together. You'll have time on rebuttal, your time. The timer went off. Fifteen minutes goes fast. Thank you. Good morning, your honors. And may it please the court. Melissa Murphy Petros on behalf of the city of Highland Park. With respect first to the motion in limine issue, I would first like to respectfully correct counsel's statement about the record. Justice Burke had asked about the order granting partial summary judgment that was entered on March 3rd of 2010. And it's at page 168 of the record. It states that defendant's motion for summary judgment is granted as to any claims premised in paragraphs 24C and D of plaintiff's amended complaint. It does not strike those allegations from the complaint. And as your honor, I believe observed, this is a verified complaint. And so those judicial admissions with respect to the construction statute of repose are still alive and well. Also with respect to this whole argument that whether or not the construction statute of repose applies, first of all, clearly in that partial summary judgment order, the circuit court found that it did. I would point out as well here that plaintiffs did not appeal from that order granting partial summary judgment on the two counts of paragraph 24. They limited their appeal to the final judgment entered on March 15th of 2011, as well as the order denying their post-trial motion. Were the plaintiffs precluded from presenting evidence regarding the fact that the house was allegedly connected, then disconnected, and not reconnected until 2008? They were not. And in fact, you know, there really is no error here because they actually asked three separate witnesses about this particular topic. They asked Mike Brenner, Bill Stewart, and Mary Anderson. They questioned all three of them extensively on that very point. Mr. Brenner testified he did not know if the home was previously connected, but based on what he saw at the driveway excavation, he believes that it was. And he testified further that he believes it was disconnected during the 1994 project. Bill Stewart testified he did not know if the home was previously connected, but believes that if it was so connected, the 1994 project was the source of the disconnect. And then finally, Mary Anderson testified that she did not know about a previous connection, but believes that it most likely was previously connected. She does not know if it was disconnected in 1994, but she testified that she believed it was very possible. So they were allowed to explore the topic of the pre-1994 connection, or lack thereof, and a disconnect in 1994 as well. So that certainly was repeatedly testified to throughout the trial. There absolutely was no harm here. But they were prejudiced by the late addition of the affirmative defense of tort immunity, correct? They were not. First of all, as Justice Hudson pointed out, 2616 allows pleadings to be amended at any time up until final judgment. Adding an affirmative defense can be done throughout trial up until the very end. I'd like to cite the cases at pages 20 and 21 of our brief, where the parties know the facts giving rise to the affirmative defense prior to trial, and the trial court can reasonably conclude that the affirmative defense has been in the case since the beginning. Certainly here, the issue of notice, actual and constructive, has been in this case since the very beginning. Plaintiff has maintained throughout that they are suing the city as a passive landowner. That means that they had to show the city either had actual or constructive notice of this defect, alleged defect, on their property. It's always been their burden to prove it. It has always been the city's burden to disprove it. And why didn't you file it earlier? I mean, if they knew notice was an issue from the very beginning of filing this complaint, and you knew notice was an issue from the beginning when you first read this complaint, then why do you wait until the plaintiff rests their case to file an affirmative defense? I can only speak to what's in the record, that we did attempt to file it after plaintiff rested. The judge actually denied that initial motion, stating that there was no evidence in the record that the alleged defect here, which is the disconnect, was on city property. Once Mary Anderson testified that it was on city property during the city's case in chief, the motion to amend was renewed and then allowed. But I would also point out that even if it was error to allow that affirmative defense, the city met its burden of disproving actual and constructive notice, even without Mary Anderson's cost-benefit testimony. First of all, there was no evidence presented anywhere that the city had actual notice of the lack of connection before the June 2008 driveway excavation. As to constructive notice, Mary Anderson testified that the project appeared to be a success. There were no complaints from anyone, including plaintiffs, since 1994 about water infiltration in their home. The city did receive one contractor call in 1999 regarding a home on Lake Street. That was immediately investigated and corrected. The Lake Street home did not have any water infiltration. It was a discovery that had been made by a contractor at that home, but they did not experience water infiltration at that house as a result of the lack of connection. There were no complaints of water infiltration from any other property involved in the project. The city, with that testimony alone, disproved constructive notice. Mary Anderson did testify about the cost-benefit of the dye testing that could have been done. The plaintiff certainly had a rebuttal case. He put on an expert witness to talk about causation. He did not. He could have called Mary Anderson back. He could have asked for a mistrial. He could have done a lot of things in that rebuttal case to try and address this issue, but did not do so. So any waiver or, excuse me, there wasn't an error. If there was an error, it was certainly harmless and or it was waived. Let me ask you something that's a little bit troubling, I suppose. Setting aside the legal leading requirements, technical requirements of statutes, you have a case here. The city, in an attempt to upgrade the sewer system, hires a contractor who obviously disconnects the house from the city's storm sewer. That's not in dispute. It got reconnected later. You know, I'm looking at a case where, let's say there's some overhanging wires or something, utility wires above a house that's obvious, that can be seen by all. This is something under the ground. So how does a homeowner in these circumstances ever get relief when they obviously have really no realistic way of knowing what the problem is? Is that a little troubling from just a human interest standpoint? No. No? First of all, a couple things. No, no, no. Well, I live in Elmhurst, so we have water issues in Elmhurst. So I'm very familiar with keeping an eye on the water in the house. A couple things. A little practical. Sure. How would somebody ever know what the problem is? Well, a couple things. First of all, there is no evidence presented at trial that the house was actually connected. We don't know that. And, in fact, Mary Anderson testified that the homes on Hazel Avenue, including Plaintiff's Home, until the 1930s were not connected to the system and instead just drained right out into the street. So there was – we don't know if their home was – it's possible their home was connected. It's possible that it wasn't. Wouldn't the contractor have known this who worked on the project? I would think that if Plaintiff had water problems for 14 years prior to filing suit, that they may have brought – should have brought this to the city's attention. I mean, I think that's really the situation here. How would they know what the problem was? Well, they knew there was a project in 1994. They claim that they had no problems before 94, and right after 94, the problems start. They never contacted the city. The city was never on notice. There was – they waited, really, until June of 2008. Finally, they find some – this disconnect or a lack of connection, I should say. If plaintiffs were having problems to the levels that they described for 14 years, had never had those problems before the sewer project, as a homeowner, practically speaking, it seems to me that you would contact your municipality to find out if perhaps that sewer project had anything to do with your water problems. By waiting, they boxed themselves out of the statute of limitations and the statute of repose. So they do have relief. They would have had relief had they timely complained to the city or somehow brought this to the city's attention. They didn't do that, and the statute of repose very clearly and correctly applies in this circumstance, as the circuit judge found. Unless your honors have any other questions for the city, we will rest on our brief for the remaining points and respectfully request affirmance. Thank you. Mr. Pitacora. I'd initially like to correct a mistake that I believe everybody has made, and the mistake is the complaint in this case was not verified. So it is not a verified complaint. It was a complaint. I mean, that doesn't, I know it changes somewhat the significance of an admission, but it was not a verified complaint. With respect to the affirmative defenses, I want to touch on the point that, and counsel made this point in her argument, I think it's a significant point. Before the plaintiff closed their case in chief, the city of Highland Park had moved for leave to file the affirmative defense predicated on 3-102. And I had specifically said to the court, I'm not going to close my case in chief if this affirmative defense is going to be granted. So I think that speaks a little bit to Justice Burke's question about what did I do, why did I do something when I found out about this. I intended to keep my case open, at least so I could try to find a witness or try to scramble to figure out what to do in response to this affirmative defense, and Judge Dunn denied it. Then, with the passage of 12 hours, the next morning, after one witness testifies that the disconnection occurred on city property, not on my client's property, which I think there's a gray area there, they renew their motion for leave to file the affirmative defense, again, after the case in chief has been closed, and Judge Dunn grants that motion. Did you move to reopen? I did not. I did not move to reopen. I did try to address it on rebuttal. But even if I had reopened at that point, what could I have done? I didn't know what any of my witnesses could say on this particular issue. I would have had two 13-F and G problems about disclosures and whether or not this was disclosed. I had a whole host of issues and obstacles that I would have had to overcome. Now, could I have done more? Certainly, I could have done more. Could I have done something differently? Hindsight is 20-20. I don't dispute that. However, I shouldn't have had to. This was prejudice to me. I shouldn't have had to scramble to address what I could have done to address this cost-benefit analysis that just got injected into the trial after my case in chief closed. I shouldn't have had to do that. That's the prejudice. Also, I want to point out that, and counsel again makes this point, that the disconnection caused on the city property. And I believe Justice Hudson asked the question, this is sort of a concealed injury. How would my clients have known that? And I agree with Your Honor. This is not exactly like the Belton case, where in the Belton case, as Your Honors know, there was a tree hanging over the street. The tree was on Forest Preserve property. The tree branch fell. It injured somebody on the public street driving down the street. And in that case, the court found 3-102 did not apply because the injury occurred on adjacent property. And that's what happened in this situation. In this situation, the disconnection may have been in the city thoroughfare, but the subsequent backup of the water and the infiltration into the home happened on adjacent property. And there was no way for my clients to determine there was a disconnection. They called plumbers. They called roofers. They called handymen. They called contractors. They did things for 14 years to try and diagnose the problem unsuccessfully. What could the city have done? Well, A, they knew about the 1994 project, and they could have done more to ensure that every house was reconnected. B, they knew about the 1999 issue, and they could have done something after that that could have tested all the lines to see if everyone was connected.  And if they had started at Lake Street and moved west, two houses later, they would have identified my client. Two houses later, and they could have corrected the problem. So I think it's reasonable to infer that the city had constructive notice. The mere passage of time and the nature of the concealed defect suggests to me the city should have had constructive notice. You seem to be arguing the sufficiency of the evidence, though. I mean, the jury determined otherwise. Although the jury, the answer to the special interrogatory, do we have to find, well, first there was a question. Do we have to find all elements of negligence, including notice? Because the jury instruction that was tenored in this case focused unnecessarily on notice and cost-benefit analysis. So the jury asked, do we have to find all elements of negligence to find negligence? And then the special interrogatory was, was there actual or constructive notice? And the jury said no. I think those two questions, can we find negligence related to 1994, do we have to find all the elements of negligence to find for the plaintiff, and the answer to the special interrogatory, they didn't find notice. That, to me, that is the case. That is the case, and we were limited in what we could present and argue to the jury, and the jury was unnecessarily focused on things they shouldn't have been focused on. If they could have considered the 1994 project, for example, maybe they would have found that there was notice. Or if we could have explored the 1999 issue, and if we could have introduced the PowerPoint presentation and the e-mail from Mary Anderson, the jury may have considered that was constructive notice as of 1999. But they were limited in what they could consider. So we would respectfully ask the justices to reverse and remand this case for a new trial on the issue of liability and damages, or just on the issue of damages, because we believe liability was established. Thank you. Thank you, counsel. The court will take the matter under advisement and render a decision of due course. Court stands in brief recess until the next hearing.